# CHARLESTON.

BOYD *et al. v.* BROWN.

Submitted June 17, 1899 Decided December 2, 1899.

1. PROMISE—*Mutuality—Performance Binding.*
    A promise lacking mutuality at its inception becomes binding upon the promisor after the performance by the promisee. (p. 249).

2. MUTUALITY—*Defense—Specific Performanc.*
    Lack of mutuality is no defense, even in a suit, for specific performance, where the party not bound thereby has performed all of the conditions of the contract, and brought himself clearly within the terms thereof. (p. 249).

Appeal from Circuit Court, Tyler County.

Bill by W. F. Boyd and Archie P. Boyd and others against W. J. Brown. Decree for plaintiffs, and defendant appeals.

F. D. YOUNG and BASIL P. BOWERS, for appellant.

F. L. BLACKMARR, for appellees.

MCWHORTER, JUDGE:

At the November rules, 1897, W. F. Boyd and A. P. Boyd, partners as Boyd Bros., and A. J. Malarky and G. B. McMillen, partners as Malarky & McMillen, filed their bill in chancery in the circuit court of Tyler County against W. J. Brown, alleging that in the month of June, 1897, said plaintiffs, W. J. Brown, U. F. Randolph, H. W. Roberts, M. R. Seal, C. C. Marsh, J. L. Thompson and O. Hickok, were the owners of an undeveloped lease for oil and gas purposes, situate in Ellsworth district, Tyler County, dated August 8, 1897, made by D. W. Snider and Sarah J., his wife, to J. L. Thompson and H. W. Roberts, on a tract of thirty and forty-seven one-hundredths acres of land, and held the same in the following proportions: Boyd Bros. one-fourth, Malarky & McMillen, one-twelfth, W. J. Brown,

one-eighth, U. S. Randolph, one-twenty-fourth, H. W.
Roberts, one-eighth, M. R. Seal, one-sixteenth, C. C. Marsh,
one-sixteenth, J. L. Thompson, five-twenty-fourths, and O.
Hickok, one-twenty-fourth; and the said owners being de-
sirous of having a test well drilled on the lease, which at
that time was undeveloped, and considered what is known
as "wild cat" territory, they met on the——day of June,
1897, for the purpose of making some arrangement to have
a test well on the lease, and said Brown, Randolph, Rob-
erts, Seal, Marsh, and Thompson "made the following
propositions to the said Boyd Bros. and Malarky & Mc-
Millen: That if they, the said Boyd Bros., and Malarky &
McMillen, would drill a test well for oil and gas upon said
D. W. Snider lease, and carry the interest of each of them
free of any and all expense to them and at once com-
mence operations for the drilling of said well for oil and
gas on said leased premises, and prosecute the same dili-
gently to completion to the bottom of the Big Injun sand,
unless oil and gas should be found in paying quantities at
a less depth, and, if the said well should be a flowing, pro-
ducing well, to make the necessary connections, and pro-
vide the same with not less than two two hundred and
fifty-barrel tanks, and, should said well be a paying, pump-
ing, producing well, to tube the same, and provide it with
the necessary sucker rods, tankage, and complete pump-
ing outfit, said well to be drilled and provided with the
necessary machinery, material, and equipments by the
said Boyd Bros., and Malarky & McMillen without cost or
expense of any kind whatsoever to them, and, if said well
should not be a producing well, that the said Boyd Bros.
and Malarky & McMillen should have the right to keep,
take, and remove all the machinery and material placed by
them upon said lease, but, if said well should be a paying,
producing well, that then they should each have, hold, and
enjoy the same proportionate interest in said well and in
the wood rig, boiler, engine, casing, tubing, sucker rods,
pumping outfit, and all machinery, material, and equip-
ments neccessary for the operation of said well that they
would hold and own in the leasehold upon which said well
should be situated after they one and all had complied with
the terms of this agreement, without cost or expense to

them of any kind. That they, the said W. J. Brown, U. F. Randolph, H. W. Roberts, M. R. Seal, C. C. Marsh, and J. L. Thompson would each give, assign, and convey unto the said Boyd Bros. and Malarky & McMillen the undivided one-half of the interest then held and owned by each of them in the said D. W. Snider lease, and the said Boyd Bros. and Malarky & McMillen then and there accepted said proposition, and agreed to drill said well upon the terms proposed by the said W. J. Brown, U. F. Randolph, H. W. Roberts, M. R. Seal, C. C. Marsh, and J. L. Thompson, and the said Boyd Bros. and Malarky & McMillen agreed that they would begin the putting down of said well upon the next day; and it was further agreed that, upon the completion of said well in accordance with the terms of the agreement proposed by the said W. J. Brown and others, and accepted by the asid Boyd Bros. and Malarky & McMillen, being the same as heretofore stated, that the said W. J. Brown, U. F. Randolph, H. W. Roberts, M. R. Seal, C. C. Marsh, and J. L. Thompson would give and convey unto the said Boyd Bros. and Malarky & Mc-Millen the following undivided interest in said Snider heirs' lease, to wit, the said W. J. Brown would convey to them an undivided five-forty-eighths interest, the said U. F. Randolph would convey to them an undivided one-forty-eighth interest, the said H. W. Roberts would convey to them an undivided three-forty-eighths interest, the said M. R. Seal would convey to them an undivided one-thirty-second interest, the said C. C. Marsh would convey to them an undivided one-thirty-second interest, and the said J. L. Thompson would convey to them an undivided three-forty-eighths interest. That, having accepted the terms proposed by the said W. J. Brown, U. F. Randolph, H. W. Roberts, M. R. Seal, C. C. Marsh, and J. L. Thompson for the drilling of said well upon said Snider heirs' lease, the said Boyd Bros. and Malarky & McMillen began operations upon the following day after said agreement was made for the drilling of said well, put up the necessary wood-rig, purchased the necessary machinery, casing, and all material necessary for said well and drilled and completed said well in accordance with each, every, and all of the terms of the agreement aforesaid, and said well

proved to be a very large paying well; and thereupon
said Boyd Bros. and Malarky & McMillen, having fully
executed and completed and complied with the terms of
the agreement heretofore stated for the drilling of said
well, they called upon the said W. J. Brown. U. F. Ran-
dolph, H. W. Roberts, M. R. Seal, C. C. Marsh, and J. L.
Thompson to give, assign, and convey to them the respec-
tive interest in the said D. W. Snider lease, a copy of which
said lease is hereto attached, and made a part of this bill
as 'Exhibit A'; and the said U. F. Randolph H. W. Rob-
erts, M. R. Seal, C. C. Marsh, and J. L. Thompson readily
complied with the terms of the agreement aforesaid on
their part, and executed an assignment to the said Boyd
Bros. and Malarky & McMillen for the undivided inter-
ests in said lease which they had agreed to give to Boyd
Bros. and Malarky & McMillen as a consideration for the
drilling of said well without any cost or expense to them.
That the said W. J. Brown refused, and still refuses, to
convey unto the said Boyd Bros. and Malarky & McMillen
the undivided three-forty-eighths interest in said D. W.
Snider lease hereto attached as 'Exhibit A,' which he
agreed to give and convey to them in consideration of
their drilling said well upon the terms and conditions as
aforesaid, and of its proving to be a paying, producing well.
And the said plaintiffs further complain and say that, hav-
ing fully complied with and executed the terms of the
agreement in regard to the drilling of said well upon their
part, and having expended in so doing a large sum of
money, to wit, the sum of more than——thousand dollars,
the said W. J. Brown in law and equity is bound to convey
to them the said undivided three-forty-eighths interest in
said D. W. Snider lease, as he agreed that he would do.
And the plaintiffs further complain and say that there
were present at the time of the making of said agreement
by the said W. J. Brown the following named persons,
to wit, W. J. Brown, the defendant in this suit, U. F. Ran-
dolph, M. R. Seal, C. C. Marsh, J. L. Thompson, W. F.
Boyd, A. P. Boyd, A. J. Malarky, and the said H. W. Rob-
erts was represented by the said U. F. Randolph. And the
said plaintiffs further complain and say that by and
through the refusal of the said W. J. Brown to give and

convey to them the undivided three-forty-eighths interest in said D.W. Snider lease in consideration for the execution of the agreement by them for drilling said well as set lorth in this bill of complaint they will suffer irreparable loss, and great pecuniary damage, the amount of which it is impossible to calculate." They further allege that said Brown was offering to sell and dispose of said three-forty-eighths interest which he agreed to convey to them in consideration of their drilling said well and carrying his interest therein without any costs or expense to him, and was trying to get possession of the proceeds of the oil sold from said lease that would belong to said three-forty-eighths interest, which was in the custody of W. L. Armstrong, who was appointed receiver of said Snider lease in the chancery cause of T. M. Darrah and others against W. F. Boyd, W. J. Brown, and others in the circuit court of Tyler County, and Brown refused to give or turn over to plaintiffs that share of the money produced from the said oil that would belong to the said three-forty-eighths interest in the Snider lease that said Brown agreed to give to plaintiffs in consideration of drilling said test well, and prayed that defendant Brown be enjoined and inhibited from selling or disposing of or conveying to any one but plaintiffs the said undivided three-forty-eighths interest in said lease, and from taking or receiving, or in any way disposing of, the money in the hands of said receiver, Armstrong, on account of said three-forty-eighths interest, and that defendant Brown be required to convey to plaintiffs said interest in said lease, in accordance with his said agreement, together with a division order in the pipe line running the oil from the said Snider lease for an undivided three-forty-eighths part belonging to the working interest of said lease, and that said receiver, upon the settlement of his account, be decreed to pay to plaintiffs that share of the money that belongs to and may be payable to the said undivided three-forty-eighths interest in said lease in the possession of said Armstrong, and for general relief. Plaintiffs exhibit with their bill the said lease. Defendant Brown filed his pemurrer and answer to said bill, admitting the ownership of the lease as alleged, and that it was wholly unde-

veloped; but denies the material allegations of the bill; alleges that he not only did not assent to the contract with plaintiffs for drilling the well, as alleged, but objected to it, stating that he had been offered better terms, and that at the time the parties were together as alleged respondent said he would not agree to it at that time, but would consider the matter, and decide what to do, and so advised his joint tenants; and that, although he arrived at the conclusion not to agree to said proposition, he never had any further conversation relating to the matter until after the commencement of the test well, or, possibly, the completion of it with his tenants in common. Respondent avers that Boyd Bros. went into possession of said leasehold without asking his consent, and without such consent, and without any agreement made with him, which, as joint tenants, they had a right to do, and which respondent could not prevent if he had so desired, and did drill a test well thereon, and brought in a good producing well. Respondent avers that any verbal contract entered into by any of said joint owners of said leasehold with Boyd Bros. or any other person on said——day of June, 1897, or at any other time, was and is absolutely null and void, and of no force or effect, and not enforceable at law, for the reason that it was an attempt to convey real estate, or such interest therein as required a deed to pass title, and is strictly within the prohibition of the statute of frauds; and submits to the court as a matter of law that plaintiffs should not have or maintain this suit on the bill filed in the cause averring that the entire expense incidental to drilling, operating, etc., said lease up to March 10, 1898, amounts to twenty-nine thousand six hundred and two dollars and forty-seven cents, and the entire receipts therefrom are fifty thousand five hundred and ninety-four dollars and seventy-five cents to same time, and respondent is entitled to one-eighth part of the moneys, subject to his eighth part of the drilling and expenses, and also to moneys paid him by Armstrong, the receiver; and prays that plaintiffs be decreed to have no claim of title on the said one-eighth undivided interest of respondent, and that their bill be dismissed. Depositions were taken and filed on behalf of both plaintiffs and defendant, and the cause was

submitted on the——day of August, 1898, when the court
overruled the defendant's demurrer to the bill, and by its
decree enjoined defendant from selling, disposing of, or
conveying to any one except plaintiffs the undivided one-
sixteenth interest in the lease, and from taking or receiv-
ing or in any way disposing of the money in the hands of
Receiver Armstrong, otherwise than as ordered by said
decree, belonging to said one-sixteenth interest in said
lease, and directed defendant to convey to plaintiffs the
undivided one-sixteenth interest in said lease, and to ex-
ecute a division order in the Eureka Pipe Line Company,
running the oil from said Snider lease, for an undivided
one-sixteenth part of said oil belonging to the working in-
terest of said lease to plaintiffs, and that Receiver Arm-
strong be ordered and decreed to pay to plaintiffs that
share of the money that belongs to and may be payable to
the said undivided one-sixteenth interest in said lease
that is in possession of said Armstrong, and that said de-
fendant Brown execute said assignment for said one-six-
teenth interest and the said division order within ten days
from the entering of the decree, and that said defendant
Brown pay to plaintiffs the cost of their suit.

From this decree defendant appealed to this court, and
says that the court erred in overruling his demurrer to
the bill; that the demurrer should have been sustained be-
cause the bill contains no equity and discloses no ground
of equitable jurisdiction; that the contract, if any, was a
verbal contract for the sale of real estate, or an interest
therein, and was absolutely void; and cites authorities to
show that real estate can only be conveyed by deed, and
that the contract sued upon here is such as is inhibited by
the sixth clause of chapter 98, Code. Courts of equity do
not hesitate to enforce even verbal contracts for the sale of
real estate where there has been part performance in good
faith. In *Lowry* v. *Buffington*, 6 W. Va. 249,—a suit
brought to enforce a parol contract,—it is held that:
"When there has been part performance of a contract for
the sale of land by the purchaser being put in possession
of the property and payment of the purchase money, or
part thereof, and an offer to pay the residue according to
contract, and valuable improvements have been made on

the land by the purchaser on faith of the contract, the statute of frauds cannot be successfully pleaded in bar to the performance in a court of equity." In *Campbell* v. *Fetterman's Heirs*, 20 W. Va. 398, JUDGE SNYDER, in the opinion of the court, prepared by him, says: "The principles of law upon which parol contracts for the purchase of lands will be specifically decreed in courts of equity have been fully settled by a number of decisions of this court, and from these the following doctrines, among others, may be deduced: (1) The jurisdiction to enforce such contracts is entirely settled and unquestioned. (2) That the exercise of such jurisdiction is an application to the sound discretion of the courts, and is not a right to be granted ex debito justitiae; but, when the contract is unobjectionable, it is as much a matter of course for courts of equity to decree the specific execution of it as it is for courts of law to give damages for a breach of it. * * * (4) That in such cases it must appear: First, that the parol agreement relied on is certain and definite in its terms; second, the acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved; and third, the agreement must have been so far executed that a refusal of full execution would operate a fraud upon the purchaser, and place him in a situation which does not lie in compensation at law,"—and cites *Land Co.* v. *Vinal*, 14 W. Va. 637; *Baldenberg* v. *Warden, Id.* 397; *Middleton* v. *Selby*, 19 W. Va. 167; *Lowry* v. *Buffington*, 6 W. Va. 249. The contract relied on in case at bar was surely certain and definite in terms. Boyd Bros. and Malarky & McMillen were to furnish everything, and be at all expense in preparing to produce and save the oil, in consideration of which the other parties were to assign to them one-half of their respective holdings in said lease. These people, the owners of the lease, were in some sort of trouble about the lease,—others, called the "Johnston people," claiming the right to it,—and had placed some material on the premises, and several of the owners of the Snider lease had gone, perhaps on the same day the meeting was held and the contract made, and had removed from the premises the material or stuff the Johnston people had placed there; and they were anxious to get

to drilling as soon as possible, that they might retain their possession; and defendant Brown himself, in speaking of the meeting when the contract was made, says:, "I don't think any one was there but what thought it best to act as prompt as possible." While defendant Brown testifies consistently with the allegations of his answer, and denies that he entered into the contract, on the other hand, all the others who were present making the contract say that he agreed with the rest of them to put his interest in on the same terms.

Appellant's second and third assignments are of the same character,—that the court erred in entering any decree against appellant, none being warranted by the evidence; and that it erred in decreeing in favor of plaintiffs upon their evidence taken and filed because the matters alleged and the proof do not agree. It is claimed that the bill alleges a contract with Boyd Bros. and Malarky & McMillen, while the proof—at least a part of it—speaks of a contract with Boyd Bros., and then it is claimed that the whole work was not done under the verbal contract, but that there was a written contract, signed by a part of the owners; and hence the fourth error assigned, —that the court erred in not reciting in its final decree what, in its opinion, the contract really was between complainant and defendant. About the time, or a little while before, the well was completed, the contract was reduced to writing, assigning the one-half of the several interests in the lease to Boyd Bros. and Malarky & McMillen in pursuance of the verbal contract, and was signed by all except defendant Brown and Hickok. The paper was presented to Brown to assign his one-half interest soon after the well came in, when he refused. The contract is about as clearly proved as a contract could well be. The witnesses testifying in regard to the contract, it is true, sometimes mentioned the contract as let to Boyd Bros., and yet I believe every one of them somewhere in this testimony mentioned Boyd Bros. and Malarky & McMillen as the contractors, and it was clearly understood by all that it was a matter between Boyd Bros. and Malarky & McMillen, and that Malarky was to do the drilling as far as the work and superintendence was concerned, Boyd Bros. and Malarky & Mc-

Millen to furnish everything, and complete the well, and do all that was necessary to produce and save the oil, whether the well should be a "flowing well" or "a pumper." Boyd Bros. and Malarky & McMillen went to work in good faith the next day after the contract, and completed the work. As stated by defendant in his testimony. "The work was commenced as soon as possible;" and he says, as far as he could learn, it was pushed to completion as rapidly as possible. There was no uncertainty in the contract as to what Boyd Bros. and Malarky & McMillen were to furnish and to do, nor as to what the consideration was to be for such furnishing and doing. They went to the work with the distinct understanding that all the owners present when the contract was made were parties to the contract, consenting thereto, and were permitted to go on and complete the whole work, with no notice that a single one of them did not so understand it, or did not acquiesce in it. Mr. Brown gave them no notice that he did not intend to stand by the contract. He says he is ready to pay his one-eighth of the cost and expenses. He is not in a position to say what he would do if the contractors had "struck a dry hole,"—whether he would be ready to put up his one-eighth of the expenses or not. Although the testimony of the defendant is very positive, the testimony in the whole case is overwhelmingly against him, and the judgment of the circuit court on that conflicting evidence is for the plaintiffs; and it has been held by this Court in *Smith* v. *Yoke*, 27 W. Va. 639; *Bartlett* v. *Cleavenger*, 35 W. Va. 720, (14 S. E. 273); *Richardson* v. *Ralphsnyder*, 40 W. Va. 15, (20 S. E. 854), and numerous cases since, a decree so rendered on contradictory evidence, even when it is doubtful which way the preponderance is, will not be disturbed.

The fifth assignment is that the court erred in decreeing defendant should execute and deliver to plaintiffs a division order for the one-sixteenth of the oil produced and belonging to the working interest in said lease, without also providing that the proportionate share of the expense of producing same be ascertained and deducted from said interest. As the matter now stands, appellant has paid all costs and expenses proportionate to his one-eighth interest; and under this decree—if it is a decree for specific execution—

he ought only to be held liable for the one-sixteenth interest that he is allowed to hold, and Boyd Bros. and Malarky & McMillen be held liable for the expenses of producing the one-sixteenth interest that they recover, because, if there was any contract, it dates back before there was any production. There is nothing in the pleadings or record showing that all expenses and cost of production were not paid by the receiver, W. L. Armstrong. On the other hand, Mr. Armstrong, who is examined as a witness for defendant, in answer to the question, "Can you state, in the aggregate, the total amount of drilling and operating expenses of that leasehold up to the present time?" said: "The total receipts to March 10th last were fifty thousand five hundred and ninety-four dollars and seventy-five cents. Total expenses—that is outside of dividends—is twenty-nine thousand six hundred and two dollars and forty-seven cents; leaving the difference between the two sums as dividends." And A. J. Malarky, in his testimony, states that when they were enjoined they went into court, "and there was a compromise made that we was to go on and complete the well. If a producing well, there was to be a receiver appointed; that receiver to sell all the oil, and pay the bills; which was agreed upon at the court house that day." He further says W. L. Armstrong was appointed receiver. He took charge of the oil, paid the bills, and work progressed right along just the same as it did before. This would indicate at least that the expense of producing the oil was paid by the receiver before disbursing to the beneficiaries, and the presumption is that the decree is right in that regard.

The sixth and seventh assignments have been disposed of with some of the foregoing assignments. The eighth is that the court erred in decreeing in favor of plaintiffs, because the contract was not mutual in its obligations and its remedy, and could not, under any circumstances, have been specifically enforced by the defendant against the plaintiffs, as both the plaintiffs and defendant had an adequate remedy at law. "Want of mutuality in the inception of the contract may be remedied by the subsequent conduct of the parties, or by the execution of the agreement." 7 Am. & Eng. Enc. Law (2d Ed.) 115. In *Willetts* v. *Insur-*

*ance Co.*, 45 N. Y. 45, it is held: "A promise lacking mutuality at its inception becomes binding upon the promisor after performance by the promisee." *Train* v. *Gold*, 5 Pick. 380; *L'Amoreux* v. *Gould*, 7 N. Y. 349. "Want of mutuality is no defense, even in an action for specific performance, where the party not bound thereby has performed all of the conditions of the contract, and brought himselt clearly within the terms thereof." 2 Beach, Cont. § 889, and cases cited. "The obligation must be mutual. In general terms it may be said that, unless the contract binds all the parties, it will be enforced against none of them." One modification of this rule is that the rule governs such contracts only as are executory, for, when the party who is not bound has performed his part under the contract, even though not legally bound to such performance, the plea of want of mutuality cannot be made. 22 Am. & Eng. Enc. Law, 1020, 1021; *Grove* v. *Hodges*, 55 Pa. St. 504; *Schroeder* v. *Gemeinder*, 10 Nev. 355; *Hawralty* v. *Warren*, 18 N. J. Eq. 124; *Coles* v. *Trecothick*, 9 Ves. 246; 5 Wait. Act. & Def. 788. Appellant contends that this cause, as to questions of law pertaining to it, is controlled and governed by the case of *Gallagher* v. *Gallagher*, 31 W. Va. 9, (5 S. E. 297); that plaintiffs never had notorious and exclusive possession of the leasehold, and such possession as they had was never delivered to them or taken by them under any contract with appellant, nor was it retained or continued under any such contract. The facts are that on the day following the making of the contract, at night, plaintiffs went into actual possession of the premises, and proceeded to carry out their part of the contract, and did so carry it out to completion. Several of the witnesses say "they carried it out to a letter." As to whether such contract existed between them and appellant was a question of fact to be established by evidence taken in the cause, and the great preponderance, as we have seen, establishes the contract. There seems to be no error in the decree, and the same is affirmed.

*Affirmed.*