EDWARDS et al. v. ROBERTS et al.
(No. 5961.)

(Court of Civil Appeals of Texas. Austin.
Dec. 4, 1918. Rehearing Denied
Feb. 19, 1919.)

1. APPEAL AND ERROR ⊕⇒1036(6)—PERMITTING
INTERVENTION—REVERSIBLE ERROR.

In trespass to try title, any error in permitting one to intervene and prosecute suit, though corporation plaintiff had been dissolved, leaving, as contended, no suit in which to intervene, furnishes no ground for reversal; intervener being in fact a plaintiff and there being nothing to indicate that course pursued prejudiced appellants.

2. CONTRACTS ⊕⇒10(1) — "UNILATERAL CONTRACT."

A contract is unilateral, when one party furnishes no consideration to the other' and does not obligate himself to do anything which may result in injury to himself or benefit to the opposite party.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unilateral Contract.]

3. CONTRACTS ⊕⇒10(1) — UNILATERAL CONTRACT—VALIDITY.

A unilateral contract is not supported by a sufficient consideration, and unless there has been some performance, or other equitable reasons to prevent, either party may declare the contract null and void.

4. CONTRACTS ⊕⇒10(1) — UNILATERAL CONTRACT—CONSIDERATION.

Where there has been partial or full performance of a unilateral contract, such performance operates as a sufficient consideration, and renders the contract binding upon the other party.

5. CONTRACTS ⊕⇒10(4) — UNILATERAL CONTRACT—PART PERFORMANCE.

Conceding that contract for purchase of gravel was unilateral and lacking in mutuality when made, where thereafter appellants incurred considerable expense looking to performance, and paid to appellees or their vendors a considerable sum of money, which was received in part performance, the contract was binding upon all parties.

Appeal from District Court, McLennan County.

Action by the Provident Sand & Gravel Company against Alf A. Edwards and another, in which A. R. Roberts filed a plea of intervention against defendants, and also made Hugh B. Shick and others parties defendant. From the decree rendered, intervener and defendants appeal. Reversed and remanded.

Davis & Cocke, of Waco, for appellants.
E. G. Senter, of Washington, D. C., for appellees.

Findings of Fact.

KEY, C. J. On the 9th day of December, 1914, the Provident Sand & Gravel Company brought an action of trespass to try title against Alf A. Edwards and the White Rock Gravel & Sand Company; both the companies referred to being private corporations. On July 1, 1916, A. R. Roberts filed a plea of intervention against the defendants, and also made Hugh B. Shick, F. M. Shick, and Margaret S. Shick parties defendant, in which plea he sought, first, to recover the land and rents; and, second, and in the alternative, to recover judgment against the Shicks upon their warranty of title. On November 20, 1916, Roberts filed an amended plea of intervention, in lieu of his original plea, reiterating and elaborating his former pleas; and on May 22, 1917, he filed a supplemental petition, in which, among other things, he sought and obtained a restraining order, enjoining and restraining the defendants from removing gravel from the land in controversy. On November 20, 1916, the defendants filed an answer to the plea of intervention, which answer contained a plea in abatement, a general demurrer, numerous special exceptions, a general denial, and special answer alleging among other things, that by the terms of a certain instrument, attached to the plea of intervention as Exhibit A, they became the purchasers of all the gravel situated on the land in controversy, and were entitled to possession thereof in order to remove such gravel, etc. On January 22, 1917, the defendants filed their first amended answer to the plea of intervention reiterating their plea in abatement, and all their former pleas, with considerable elaboration. On June 16, 1917, the defendants filed an answer to the supplemental plea of intervention which included a general demurrer, several special exceptions, a general denial, and special plea, the substance of which need not be here stated. On June 22, 1917, A. R. Roberts filed his first amended answer to the plea of intervention, which contained a general demurrer, several special exceptions, a general denial, and a special plea, the substance of which it is not necessary to state here.

On November 20, 1916, the defendants filed a motion to dismiss Roberts' plea of intervention, alleging that the plaintiff, Provident Sand & Gravel Company, had been duly and legally dissolved, and that no successors thereto had made themselves parties plaintiff, for which reason it was claimed Roberts had no right to intervene. On the following day A. R. Roberts, A. R. Wilson, and J. Y. Webb filed a plea, alleging that they were the trustees of the plaintiff, Provident Sand & Gravel Company, which since the bringing of the suit had been dissolved, and that no receiver or liquidation agent had been appoint-

ed to take charge of the affairs of that corporation, and therefore they, as the directors of such corporation, became by operation of law trustees to wind up the corporation's business, and for that reason they asked to be made substitute trustees, and on June 28, 1917, after having been permitted to become plaintiffs, they filed a plea, adopting the plea of intervention formerly filed by A. R. Roberts.

There was a nonjury trial, which resulted in a judgment overruling the defendants' plea in abatement and motion to dismiss the plea of intervention. The court also overruled all of the .defendants' exceptions to Roberts' plea of intervention, except one, and rendered judgment for Roberts, tne intervener, for the recovery of the land in controversy, and for the value of the gravel taken therefrom by the defendants, and perpetuating the injunction. It was also decreed that the plaintiffs recover nothing from the defendants, and the defendants recover nothing upon their cross-action against the plaintiffs; and intervener, Roberts, and the defendants have prosecuted this appeal.

The trial judge filed findings of fact and conclusions of law, which it is not deemed necessary to set out in full. Suffice to say that they, in connection with the declaration incorporated in the judgment to that effect, indicate that the trial court held that the contract relied upon by the defendants was unilateral, and therefore not binding upon either party, and that each had been legally canceled by intervener, and his vendors. The contract referred to, and the one which preceded it, read as follows:

"August 5, 1909.

"This agreement, between F. M. Shick and Alf A. Edwards, witnesseth that said F. M. Shick, owning approximately 35 (thirty-five) acres of gravel land in Jake Walker survey, and desiring to sell said gravel land to said Edwards, agrees to permit said Edwards to prospect said land for the purposes of establishing the amount of gravel on said place, hereby gives said Edwards the right to put in test holes on the land at the expense of said Edwards, and further agrees that, in event that the gravel is in sufficient quantities to permit its being a paying proposition, said Edwards agrees to put a railroad track, to mine the gravel at no expense to said F. M. Shick, and to pay said F. M. Shick at the rate of 1¢ (one cent) per yard for all gravel taken out. Said Edwards agrees to use due diligence and to crowd the work of track laying and the mining of this said gravel to his utmost. Said F. M. Shick agrees to give said Edwards the contract he now holds on a right of way over the farm lands to his (Shick's) land line.

"[Signed]     Alf A. Edwards.
    "F. M. Shick."

"Second Contract.

"The State of Texas, County of McLennan.

"Know all men by these presents: That we, F. M. Shick and wife, M. S. Shick, and Hugh B. Shick, of the first part, and Alf A. Edwards, party of the second part, acting herein for himself and his associates, successors, and assigns, have this day and do hereby enter into the following contract and agreement, to wit:

"(1) The said party of the first part are the owners in fee simple of the following described tract of land situated in McLennan county, Texas, to wit: Being a part of 117 acres out of the Jacob Walker league which was conveyed to W. F. Shick as shown by deed recorded in vol. 143, page 553, of the Deed Records of McLennan county, Texas, and being at the southeast corner of said tract in the eastern line of the Waco and Ft. Graham road at the intersection of the north line of a lane leading to the Dallas road; thence N. 58¾° E. with the north line of said lane, 117 vrs., to the S. W. corner of a 25-acre tract formerly owned by I. C. Meek; thence N. 28° W., 615 vrs., to stake for corner; thence S. 58¾° W., 117 vrs., to said Waco and Ft. Graham road; thence S. 28° E., 615 vrs., to the place of beginning, containing 8½ acres of land.

"(2) That for the consideration hereinafter named the said parties of the first part do hereby bargain, sell, and convey unto the said Alf A. Edwards all of the gravel deposits in and upon the tract of land above described, whether on the surface or below the surface and to the extent of the depth thereof at the price of 2¢ (two cents) per cubic yard for all of the gravel taken from said premises.

"(3) As said land has been developed by the said Edwards at a considerable expense to himself, with the knowledge and by the permission of the parties of the first part, and as said land is located quite a distance from a railroad, and as the building of a spur from said land to a railroad will be accompanied with considerable delay and will have to be brought about by the said Edwards without any expense to the parties of the first part, and as said Edwards will necessarily be compelled to go to considerable expense in supplying the proper equipment for the mining of said gravel, obtaining right of way, etc., and as undue haste in rushing such matters might result in embarrassment to said Edwards and thwart the purposes of this contract, it is agreed that he shall have all of the time he deems reasonably necessary in order to get these preliminary matters completed so that the work of selling and shipping gravel may be started.

"(4) The said Edwards shall have the right to take immediate possession of said premises, and to keep the same until said gravel is removed, and to make all improvements thereon that he may deem necessary towards carrying on the operations under this contract, and likewise to remove all such improvements within six months after the termination of this contract.

"(5) Said Edwards agrees to use all reasonable diligence in finding a market for said gravel when the same is ready for shipment, and he also agrees to pay the party of the first part at Waco, Texas, on the 1st of each and every month after the shipments begin at the rate aforesaid for all gravel that has been shipped out, and the said.Edwards also agrees to have a man in charge of such shipments, who shall keep a book showing correct entries as to the number of cars shipped out, showing the quan-

tity of gravel taken; it being understood for the purpose of settlement that the average sized car for shipment of gravel will contain about twenty-six cubic yards of gravel, and that the party of the first part shall have the privilege of inspecting the books and records kept of such shipments at any time that he may see proper during office hours at the place where said records are kept.

"(6) Whenever said Edwards comes to the conclusion that no more gravel can be mined and shipped or sold from said premises in paying quantities, then he shall so announce to the party of the first part, whereupon all further rights of the said Edwards to mine gravel upon said premises shall cease and all further right on his part to any unmined gravel shall immediately cease.

"Witness our hands, on this the 16th day of October, 1909.

"[Signed]             F. M. Shick.
"Margaret Shick.
"H. B. Shick.
"Alf Edwards.

"The State of Texas, County of McLennan.

"Before me, Chas. E. Moore, a notary public in and for McLennan county, Texas, on this day personally appeared F. M. Shick, Margaret S. Shick, and Alf A. Edwards, and H. B. Shick, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

"Also before me this day appeared Margaret S. Shick, wife of the said F. M. Shick, known to me to be the person whose name is subscribed to the foregoing instrument, and having been examined by me privily and apart from her husband, and having same fully explained to her, she, the said Margaret S. Shick, acknowledged such instrument to be her act and deed, and declared that she willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

"Given under my hand and seal of office, this 5th day of November, A. D. 1909.

"[Signed]            Chas. E. Moore,
"Notary Public, McLennan County, Texas."

A subsequent contract was entered into, which reads as follows:

"Waco, Texas, 8—14—12.

"F. M. Shick, Alvin, Texas—Dear Sir: Referring to the contract between yourself and the writer, covering the gravel on your place on the Ft. Graham road, and which is covered by contract dated October 16, 1909, beg to advise that we have been considerably delayed in getting into operation on your side of the road, and as up to date have had no revenue in the property through us, we beg to submit the following schedules of prepayments, which are to be returned to us in gravel out of the first gravel mined on your property and which is covered by the contract of October 16, 1909:

"August 1, 1912, $30.00; September 1, 1912, $30.00; October 1, 1912, $30.00; November 1, 1912, $30.00; December 1, 1912, $40.00; January 1, 1913, $40.00; February 1, 1913, $40.00; March 1, 1913, $40.00; April 1, 1913, $40.00; May 1, 1913, $40.00; June 1, 1913, $45.00; July 1, 1913, $45.00; August 1, 1913, $50.00; September 1, 1913, $50.00; October 1, 1913, $50.00; November 1, 1913, $50.00; December 1, 1913, $50.00.

"In submitting this schedule we wish to say that we waive no rights which we might enjoy under the contract of October 16, 1909.

"I trust that this letter meets with your approval, and as it is written in duplicate that we may both sign it and understand it fully.

"These remittances are to be made to you at Alvin, Texas.     Respectfully,

"AAE—T     White Rock Gravel & Sand Co.,
"[Signed]     Per Alf A. Edwards, President.
"Accepted by F. M. Shick.
"Witness:
"N. H. Martin,
"W. J. Heine."

The undisputed proof shows that under the contract of August 5, 1909, Edwards took possession of the land and made several test holes at his own expense; that under the contract of August 16, 1909, he and his associates took possession, bought rights of way, and built spur tracks to the property at considerable expense, and had excavated some gravel from the land. Under the supplemental contract Edwards and his associates made the advanced payments therein provided for. On the 21st day of January, 1914, the Shicks conveyed the land to A. R. Roberts and John Albert Stack, and on the 24th day of February, 1914, Roberts and Stack conveyed it to the Provident Sand & Gravel Company. On June 1, 1914, the Provident Sand & Gravel Company conveyed the land to A. R. Roberts, and disposed of all of its property, and was dissolved. On October 18, 1916, the plaintiffs' suit was dismissed for want of prosecution, and on October 19th was reinstated on motion of the plaintiffs.

On the 26th day of January, 1914, the Shicks undertook to annul the contract of date October 16, 1909, by executing and delivering to the defendants the following written instrument:

"The State of Texas, County of McLennan.

"Know all men by these presents: That whereas, heretofore, on October 16, 1909, F. M. Shick and wife, M. S. Shick, and Hugh B. Shick, as parties of the first part, made and entered into a written contract of said date, with Alf A. Edwards, acting for himself and associates, as parties of the second part, which said contract is of record in Book E, page 332, of the Bill of Sale and Lease Records of McLennan County, Texas, to which instrument and the record thereof, reference is hereby made for better description;

"And whereas, by the terms of said agreement, the parties of the first part sold and conveyed to the parties of the second part all of the gravel deposits upon that certain tract or parcel of land lying, being and situated in McLennan county, Texas, a part of the 117-acre tract out of the Jacob Walker league, which said 117-acre tract was conveyed to W. F. Shick as shown by deed recorded in vol. 143, page 553, of the Deed Records of McLennan County, Texas, and which said tract of land is more fully described as follows: Beginning at the south or southeast corner of said

tract in the eastern line of the Waco and Ft. Graham road, at the intersection of the east line of a lane leading to the Dallas road; thence north 58¾° east, with the north line of said lane, 117 varas, to the southwest corner of a 25-acre tract formerly owned by I. C. Meek; thence north 28° west, 615 varas, to a stake for corner; thence south 58¾° west, 117 varas, to said Waco and Ft. Graham road; thence south 28° east, 615 varas, to the place of beginning—containing 8½ acres of land; ·

"And whereas, since the execution of said contract the parties of the second part have advanced to the said parties of the first part the sum of $650.00;

"And whereas, the parties of the second part have wholly failed and refused to comply with said contract and have breached the same in every part and parcel, and therefore the said parties of the first part are released from said contract:

"Now, therefore, the said parties of the first part do hereby declare that they are no longer bound by the terms of said agreement, and that said agreement is hereby terminated and annulled, and the said parties of the first part, no longer recognizing said agreement, will deal with said premises as if said contract had never been entered into.

"And the parties of the first part hereby notify the said Alf A. Edwards, D. H. Orand, W. M. Kelly, Dan Wise, W. W. Hyde, and the White Rock Gravel & Sand Company, Incorporated, that you will vacate said premises, and you will not enter upon the same, and you will not remove or attempt to remove any gravel or any deposits of any kind whatsoever from said premises.

"And in view of said cancellation aforesaid the parties of the first part hereby tender to the parties of the second part the said sum of $650.00, together with $25.00 interest thereon, making a total of $675.00, and hereby demand that the parties of the second part to the contract aforesaid cancel and release the contract heretofore mentioned and deliver the same to the parties of the first part for cancellation.

"Witness our hands this the 29th day of January, 1914.          F. M. Shick.
"M. S. Shick,
"By F. M. Shick.
"Hugh B. Shick,
"By F. M. Shick.
"Under Power of Attorney."

The foregoing instrument, together with $675, was placed in an envelope, carried to the office of appellant Edwards, who was the agent and manager of his codefendant, and laid upon his desk, and the person who carried it there immediately left before Mr. Edwards ascertained what it was.    Mr. Edwards made an unsuccessful effort to follow up the person who brought the package to his office, and deliver it back to him, whereupon appellants caused the $675, referred to, to be placed in a bank in Waco, Tex., subject to the order of appellees.

The proof shows that on November 4, 1909, appellants leased what was known as the Lattimore tract of gravel land, consisting of about 35 acres, which was near the land in controversy; and after that lease was made, appellants, at a very considerable expense, and after considerable, but not necessarily unreasonable, delay caused a spur track of railroad to be built to the Lattimore tract, and thereafter, after considerable, though not necessarily unreasonable, delay, and at considerable additional expense, caused the track to be extended to the land in controversy, and seemingly were prepared to utilize and develop it as a gravel bed at the time they were served with the injunction restraining them from so doing.

On December 30, 1913, appellee F. M. Shick wrote to the White Rock Gravel & Sand Company, requesting the payment of $50, the last payment under contract of August 14, 1912, and among other things used this language:

"I followed your struggle with Chalk Bluff fellows, and glad you came on top, and hope you will get out lots of stuff."

Other facts and circumstances may·be referred to hereafter.

## Opinion.

[1] We shall not undertake to set out or specifically refer to the numerous assignments of error in appellants' brief.    The first four complain of the action of the court in permitting A. R. Roberts to intervene; the main contention being that as the original plaintiff, the Provident Sand & Gravel Company, a private corporation, had been dissolved, no suit was left, and therefore there could be no ,intervention.    That contention, if not hypercritical, is without merit, and furnishes no grounds for reversing the case. The intervener was, in fact, a plaintiff, and, now that the parties have litigated the cause of action which he asserted, it seems to us it would be absurd to hold that the case should be reversed and the suit dismissed, merely because he did not file a separate suit, instead of intervening in the one already on file. There is nothing to indicate that the course pursued resulted in more court costs than would have been the case if an independent suit had been filed, and it is not claimed that as a result of that course appellants were denied any right they would have had, if the latter course had been pursued.    Hence we overrule the assignments referred to.

[2] However, we sustain appellants' contention, presented under various assignments, to the effect that the trial court erred when it held as a matter of law that appellees had the right to annul and terminate the contract.    The trial court did not find as a fact that appellants had breached any substantial part of the contract, but seems to have sustained the contention asserted on behalf of appellees, and to the effect that the contract was unilateral, and therefore not binding upon either party.    A contract is unilateral

when one party furnishes no consideration of value to the other party, and does not obligate himself to do anything which may result in injury to himself, or benefit to the opposite party.

[3, 4] Such a contract is not supported by a sufficient consideration, and therefore, unless there has been some performance, or other equitable reasons to prevent, either party may declare the contract null and void, and it will not thereafter be binding upon him; but when there has been partial or full performance, such performance operates as a sufficient consideration, and renders the contract binding upon the other party. Fontaine v. Baxley, 90 Ga. 416, 17 S. E. 1015; Brown v. Bowman, 119 Ga. 153, 46 S. E. 410; Cooper v. Lansing, 94 Mich. 272, 54 N. W. 39, 34 Am. St. Rep. 341; Boyd v. Brown, 47 W. Va. 238, 34 S. E. 907; Emerson v. Pacific Packing Co., 96 Minn. 1, 104 N. W. 573, 1 L. R. A. (N. S.) 445, 113 Am. St. Rep. 603, 6 Ann. Cas. 973.

[5] Therefore if it be conceded that the contract under consideration was unilateral, and therefore lacking in mutuality when it was first made, still, as the undisputed proof shows that appellants thereafter paid to appellees, or their vendors, the Shicks; $650 upon the contract, which was received by them in part performance on the part of appellants, and also incurred considerable expense looking to its performance upon their part, before there was any attempt to repudiate or withdraw from the contract, we hold that by reason of acceptance of such partial performance the contract ceased to be unilateral, and was binding upon both parties. This being the case, and as the trial court did not find that appellants had breached the contract, it committed reversible error in rendering judgment for appellees.

In support of the views just expressed, we quote as follows from the opinion of the Supreme Court of Georgia in Brown v. Bowman, supra, which quotation includes excerpts from several text-writers upon the question of law which controls this case:

"Bowman's agreement, which appears in the foregoing statement of facts, was evidently without consideration when made, as Brown and Taylor at that time neither did nor agreed to do anything. It was therefore, when made, unenforceable for want of mutuality. When, however, Brown and Taylor within a reasonable time, and in the absence of any revocation of the agreement by Bowman, by much labor and considerable expense, as the petition alleged, located and developed gold in the land in question, they did the very thing they were expected to do, and thereby furnished the contemplated consideration, which changed the nudum pactum into a valid and binding contract. 'A contract is often such that, until something is done under it, the consideration is imperfect; yet a partial performance, or a complete performance on one side, supplies the defect. If, for example, one promises another, who makes no promise in return, to pay him money when he shall have done a specified thing, if he does it, not only is the contract executed on one side, but also the consideration is perfected, and payment can be enforced. And, in more general terms, when from any cause the party from whom the consideration moves is not compellable to render it, if he does render it, the contract becomes thereby perfected.' Bishop, Contracts, § 87. To the same effect, see Parsons on Contracts, 451; Clark on Contracts, pp. 169, 170; Story on Contracts, § 569; 7 Am. & Eng. Enc. L. 115. In Hammond on Contracts, p. 683, it is said: 'The test of mutuality is to be applied, not as of the time when the promises are made, but as of the time when one or the other is sought to be enforced. A promise may be unenforceable for want of mutuality when made, and yet the promisee may render it valid and binding by supplying a consideration on his part before the promise is withdrawn.' This doctrine is well settled by many adjudged cases cited by the above-named text-writers, and has been fully recognized by this court. Sivell v. Hogan (this day decided) 119 Ga. 167, 46 S. E. 67, and cases therein cited."

We do not wish to be understood as holding that the contract in this case was at any time unilateral, and therefore without consideration. On the contrary, we are strongly inclined to the view that appellants rested under an implied, if not expressed, obligation to exercise reasonable diligence at their own expense to develop and place upon the market the gravel on the land in controversy; and such obligation, if it existed at the time the contract was entered into, made it a bilateral and binding obligation. It has often been held that mining contracts, which do not specifically bind the lessee to do anything looking to the development of minerals, nevertheless carry with them an implied obligation so to do. At any rate, after the contract became a binding obligation by reason of partial performance, such implied obligation rested upon appellants.

For the reasons stated, the judgment appealed from is reversed, and the cause remanded for another trial, consistent with the views expressed in this opinion.

Reversed and remanded.