## FRANK v. GAFFNEY. (No. 9093.)

Court of Civil Appeals of Texas. Galveston. Jan. 24, 1928.

Rehearing Denied Feb. 23, 1928.

1. Trusts ☜371(2)—Petition alleging oral agreement to plat land and divide half of net profits of sale held not to sufficiently allege either valid, express, or constructive trust.

Petition alleging that defendant agreed to purchase a tract of land, make first payment on purchase price, and give notes for balance thereof, that tract was to be taken in defendant's name, to be subdivided into residential lots and sold by plaintiff, and that one-half of net proceeds of sale of lots, after reimbursing defendant for his payment, with interest, should belong to plaintiff, and defendant's breach of the agreement after plaintiff had sold nearly two-thirds of lots, held not to allege valid trust, constructive or express, in one-half of proceeds of sale of property after payment to defendant of purchase price.

2. Partnership ☜20—Agreement that land purchased shall be sold by another for share of proceeds does not constitute partnership.

Where one buys land, and agrees that another shall sell it for compensation to be derived from share of profits, such agreement does not constitute a partnership.

3. Contracts ☜10(2)—Part performance of contract to pay share of profits for selling realty operates as sufficient consideration to render contract mutual.

As respects mutuality, where one buys land, and agrees that another shall sell it for compensation to be derived from share of profits, and agreement is partly performed by latter, such performance operates as sufficient consideration, and renders contract binding on the other party.

4. Trusts ☜305—Plaintiff's testimony respecting agreement to pay him net proceeds of sale of realty for services held to show right to accounting.

Testimony for plaintiff that defendant took title to land on which defendant made part payment on purchase price, and gave notes for balance under agreement that plaintiff should subdivide property and sell it, and that one-half of proceeds, after payment of purchase price, with interest, should belong to plaintiff, and that, after plaintiff sold nearly two-thirds of lots, defendant wrongfully broke and terminated agreement, held to show right to accounting for one-half of net proceeds.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by J. G. Frank against Thomas E. Gaffney. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Fulbright, Crooker & Freeman, of Houston, for appellant.

Geo. D. Sears and W. P. Hamblen, both of Houston, for appellee.

LANE, J. This suit was brought by J. G. Frank against Thomas E. Gaffney to recover a one-half undivided interest in three and one-half acres of land near to, or inside of, the limits of the city of Houston, or for certain profits alleged to be due him in making sales of portions of said land, and for an accounting.

For cause of action, the plaintiff alleged that in 1921 he began negotiations with Miss Halff, who then owned the land in controversy, with a view of purchasing the same, foreseeing that it afforded a profitable investment, but, being unable to make the cash payment of $1,000 demanded by Miss Halff as a first payment on the purchase price of $2,875, he told the defendant about the land and his conclusion that the purchase thereof would be a good investment; that defendant told him that, if the investment was as good as plaintiff said it was, defendant would go in with him in the purchase of the land; that it was agreed by and between him and defendant that, if the property was purchased, it was to be deeded to defendant, but that one-half thereof was to be held by defendant in trust for plaintiff; that defendant paid the first payment of $1,000 on the purchase price in cash, and executed his notes payable to Ella Halff for the sum of $1,875, the balance of the purchase price, and that, in consideration of the aforesaid payment and execution of said notes, Ella Halff executed a deed conveying to defendant the land; that, at the time, and prior to the time, of purchase of the land, it was agreed by and between plaintiff and defendant that, in the event said property was purchased, it would be subdivided into residential lots, and designated as "Frank second addition," and thereafter it should be sold for such prices as might be agreed upon by the parties, and that, out of the proceeds of such sale or sales, the defendant should be fully reimbursed for the $1,000 paid by him, together with 8 per cent. interest per annum thereon, and also the notes executed in part payment for the land; that all property and proceeds arising from sales of parts of the property remaining after such payments were made should be the property of plaintiff and defendant in equal portions; that it was agreed by and between the parties that, after such subdivision was made, plaintiff was to have exclusive charge and control of the property; that, after the property had been purchased, the property was subdivided, as agreed upon, into 40 lots, numbered from 1 to 40, inclusive; that thereafter plaintiff advertised the property for sale, and sold 29 of the 40 lots to various parties for the aggregate sum of $11,375; that plaintiff collected of said sum $2,656, and turned the same over to defendant, except $200. He alleges that practically all of the purchasers would have carried out their

contracts and have paid all the purchase money for their several purchases had not defendant informed them that he could not convey to them good title. He alleged that the unsold lots were worth $5,000; that on or about the 1st day of June, 1924, defendant repudiated his agreement with plaintiff, took possession of the property and all outstanding obligations of the purchasers of parts thereof.

The plaintiff prayed for an accounting to determine his share of the profits which had arisen or to arise from the sale of the land, and that, if it be held by the court that he is not entitled to one-half of the land, then he be awarded one-half of the net profits derived from the sale of the land.

Defendant answered by general demurrer, special exceptions, by sworn denial of partnership, and by general denial, and by way of special answer alleged:

"That at plaintiff's solicitation he employed plaintiff to plat and sell the property of defendant described in plaintiff's petition upon the terms that plaintiff was to attend to the details of platting, and obligate himself to sell out the property completely at not to exceed 90 days from the time he became defendant's agent for such purpose; was to collect all deferred payments, and to remit same promptly to defendant; and, from the sales of defendant's property by plaintiff and collection thereon by plaintiff, defendant should first deduct the cost of said property to himself—defendant owning said property and having paid the total consideration therefor—together with 8 per cent. interest on his investment and reimbursement for any time and expense which defendant should be put to, and plaintiff, as agent for defendant, and as compensation for his services, was to receive one-half of the amount remaining, if any; and alleging various and sundry breaches on the part of defendant of the alleged agreement and cross-action for damages."

A jury was selected and sworn to try the case, but, when the plaintiff had offered his evidence and closed, the court, upon motion of defendant for peremptory instruction in his behalf, gave such instruction. The jury returned its verdict in accordance with such instruction, and judgment was accordingly rendered. From such judgment the plaintiff has appealed.

[1] We cannot sustain appellant's contention that there were pleadings and evidence which made it the duty of the trial court to submit to the jury the question of whether or not appellee held one-half of the land in controversy in trust for appellant, or that the same was held by appellee under a partnership agreement entered into between the two parties. We do not think there was either pleading or evidence calling for such submission. We think the effect of the petition, when read as a whole, is to allege, first, that the title to the land went into the defendant, Gaffney, and that only when he repaid himself the purchase money, together with 8 per cent. per annum interest thereon, and other expenses incident to the development of the property, out of proceeds derived from sales of a part or all of the property, the remainder of same, if any, would become impressed with a trust in favor of plaintiff, and that, if no lots were sold, or if all were sold at such prices as would not enable the defendant to repay to himself such purchase money and expenses, then no trust interest would vest in the plaintiff.

The effect, then, of the petition is not to allege that there was a parol express trust engrafted on the deed by which Ella Halff conveyed the land to the defendant at the time or before the same was executed, but it in effect alleges that a trust was to arise and take effect only in the event a sale of a part of the land would produce a sufficient sum to pay to the defendant the purchase price of the land.

There is no allegation that plaintiff paid, or obligated himself to pay, any consideration for an agreement on the part of defendant to hold for him any interest in the property, and therefore, if made without consideration, it would create no legal obligation, and no express trust could result therefrom. We are also of opinion that the evidence goes no further towards showing the existence of an express trust than does the pleadings of the plaintiff.

In the circumstances shown it is apparent that there can be no character of resulting trust in the present case. Allen v. Allen, 101 Tex. 362, 107 S. W. 529; Alliance Milling Co. v. Eaton, 86 Tex. 409, 25 S. W. 614, 24 L. R. A. 369; Brotherton v. Weathersby, 73 Tex. 473, 11 S. W. 505; Arnold v. Ellis, 20 Tex. Civ. App. 262, 48 S. W. 883; Goodrich v. Hicks, 19 Tex. Civ. App. 528, 48 S. W. 798; Wade v. Cohen (Tex. Civ. App.) 173 S. W. 1168; Colla v. Brown (C. C. A.) 144 F. 744.

In Allen v. Allen, supra, it is said:

"The language used in the decisions applying the rule that express trusts in lands may be proved by parol must be understood as referring to trusts of the nature of those in question in the particular cases and must not be so applied as to permit the passing of the title of one to another by mere parol agreement, as is here attempted, because such an application of the rule would completely defeat the statutory provisions referred to."

In Burns v. Veritas Oil Co. (Tex. Civ. App.) 230 S. W. 445, it is also said:

"It is essential that the party setting up the trust shall have paid or become bound for the purchase money on his own account and as a part of the original transaction."

We think, however, the contention of appellant that the court erred in instructing a verdict for appellee should be sustained.

[2, 3] The plaintiff alleged facts which, if true, would entitle him to an accounting and

a division of the profits which have been, and which would have been, realized from the sale of the land under his management, had defendant not wrongfully breached the agreement entered into between them, and thereby prevented plaintiff from making a profitable disposition of all the land. While it is true, as contended by appellee, that, where one buys land, and agrees that another shall sell it, the compensation of the latter to be derived from a share of the profits, such agreement does not constitute a partnership, yet it is equally true that, when there has been a partial or full performance of the agreement by one party in such case, and as in the present case, such performance operates as a sufficient consideration, and renders the contract binding upon the other party. Edwards v. Roberts (Tex. Civ. App.) 209 S. W. at pages 250 and 251; Id. (Tex. Civ. App.) 212 S. W. 673; Faulkner v. Reed (Tex. Civ. App.) 229 S. W. 945; Fountaine v. Baxley, 90 Ga. 416, 17 S. E. 1015; Brown v. Bowman, 119 Ga. 153, 46 S. E. 410; Cooper v. Lansing, 94 Mich. 272, 54 N. W. 39, 34 Am. St. Rep. 431; Boyd v. Brown, 47 W. Va. 238, 34 S. E. 907; Emerson v. Packing Co., 96 Minn. 1, 104 N. W. 573, 1 L. R. A. (N. S.) 445, 113 Am. St. Rep. 603, 6 Ann. Cas. 973.

In Brown v. Bowman, supra, the court said:

"Bowman's agreement, which appears in the foregoing statement of facts, was evidently without consideration when made, as Brown and Taylor at that time neither did nor agreed to do anything. It was therefore, when made, unenforceable for want of mutuality. When, however, Brown and Taylor within a reasonable time, and in the absence of any revocation of the agreement by Bowman, by much labor and considerable expense, as the petition alleged, located and developed gold in the land in question, they did the very thing they were expected to do, and thereby furnished the contemplated consideration, which changed the nudum pactum into a valid and binding contract. 'A contract is often such that, until something is done under it, the consideration is imperfect; yet a partial performance, or a complete performance on one side, supplies the defect. If, for example, one promises another, who makes no promise in return, to pay him money when he shall have done a specified thing, if he does it, not only is the contract executed on one side, but also the consideration is perfected, and payment can be enforced. And, in more general terms, when from any cause the party from whom the consideration moves is not compellable to render it, if he does render it, the contract becomes thereby perfected.' Bishop, Contracts, § 87. To the same effect, see Parsons on Contracts, 451; Clark on Contracts, pp. 169, 170; Story on Contracts, § 569; 7 Am. & Eng. Enc. L. 115.

"In Hammond on Contracts, p. 683, it is said: 'The test of mutuality is to be applied, not as of the time when the promises are made, but as of the time when one or the other is sought to be enforced. A promise may be unenforceable for want of mutuality when made, and

yet the promisee may render it valid and binding by supplying a consideration on his part before the promise is withdrawn.' This doctrine is well settled by many adjudged cases cited by the above named text-writers, and has been fully recognized by this court. Sivell v. Hogan (this day decided), 119 Ga. 167, 46 S. E. 67, and cases therein cited."

The following rules are stated in Corpus Juris:

"Want of mutuality is no defense in the case of an executed contract. A promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee." 13 Corpus Juris, § 181, p. 334.

The same rule is substantially repeated in sections 182, 189, and 73 of the same volume.

[4] Appellant, Frank, testified that Miss Ella Halff offered to sell him the land for $4,200, to be paid as follows: $1,000 cash and vendor's lien notes for the balance; that he could not raise the $1,000, so he saw defendant, Gaffney, and explained to him the proposition of Miss Halff, and told him that the land could be divided into lots and sold to negroes on the installment plan for a large profit, but that he did not have the $1,000 demanded as first payment, and that, if Gaffney would buy the land for them jointly, witness would pay 8 per cent. interest on one-half of the $1,000; that Gaffney and witness saw Miss Halff, and Gaffney offered her $2,-875 for the land, which she accepted, and, upon the payment by Gaffney of the $1,000 and the execution and delivery to her of notes for the deferred payments, she conveyed the property to Gaffney. He further testified that Gaffney agreed that he might plat and sell the land by lots, collect all deferred payments on such sales, and pay over to Gaffney all moneys collected until Gaffney was repaid the $1,000 paid by him to Miss Halff, the notes executed by him in part payment for the land, 8 per cent. interest on the $1,-000, and all expenses incurred in the purchase and platting of the land, and that, after such payments were made, the plaintiff was to receive one-half of the remainder of the proceeds to be derived from the sale of the land as compensation for his services for making sale of said property; that, upon the consummation of said agreement, plaintiff had the land platted into 40 lots, and sold 29 of them for more than $11,000, and would have sold all of them had not appellee wrongfully breached and terminated said agreement and contract by taking the land and all matters connected therewith from the witness.

E. J. McInnerney testified that he was present and heard the conversation between appellant and appellee with reference to the land; that such conversation was, substantially, "They were figuring on buying that piece of land and developing it, putting it on the market and selling it; Mr. Gaffney was to

pay for the land and Mr. Frank was to sell it. They were then to divide the profits between them. Mr. Gaffney was to put up the money and Mr. Frank was to divide the piece of acreage into lots and sell it off and divide the profits."

As already shown, appellee offered no evidence.

We think, under the evidence so far adduced, appellant would be entitled to an accounting as prayed for, and that, if such accounting shows that a profit was made in the sale of the land, he would be entitled to one-half thereof and for one-half of the proceeds to arise from the sale of any unsold part of the land. But, as the case was not fully developed, we have concluded that the judgment should be reversed and the cause remanded, and it is so ordered.

Reversed and remanded.