**STALEY et al. v. HARVEY et al.**

No. 6474.

Court of Civil Appeals of Texas. Texarkana.

Dec. 1, 1949.

Rehearing Denied Jan. 26, 1950.

Weeks, Hankerson & Surles, Tyler, for appellants.

Pollard, Lawrence & Reeves, Tyler, J. Byron Saunders, Tyler, for appellees.

WILLIAMS, Justice.

Appellees, Mike Harvey and others, partners operating as Tyler Brokerage Company, executed and delivered to appellants S. Skeen Staley, Jr., and his father, plaintiffs below, an alleged contract evidenced by a letter, the basis of this suit, which reads:

"Tyler Brokerage Company, Ltd.
Tyler, Texas.
December 2, 1947.

"S. Skeen Staley, Jr.
312 Lacy Building,
Dallas 1, Texas.

Dear Sir:

"This will confirm our sale to you of 600 tons of soil pipe and fittings to be delivered at the rate of 100 tons per month starting in January 1948 and to be completed during June 1948.

"As quoted, the price on victory weight pipe, sizes 2" through 6" will be list price plus 23½% f. o. b. cars Tyler, Texas. On fittings 2" through 6" the price will be list price plus 29½% f. o. b. cars Tyler, Texas.

"The terms on this sale will be sight draft B/L attached payable at the Tyler State Bank & Trust Company, Tyler, Texas.

"The seller shall not be liable for failure or delay in delivery by reason of any contingencies beyond the seller's reasonable control, including strikes, differences with workmen, fire, flood, embargo, war governmental regulations, including allocations, preferences or priorities for Government and other orders, or shortage or failure of raw materials, fuel or transportation.

"Yours very truly
Tyler Brokerage Company, Ltd.
By W. M. Heller."

In January, 1948, appellees delivered a total of 100 tons of soil pipe to McKay Lumber Company and out of the proceeds of this sale paid to plaintiff the excess realized above the price quoted in above letter. On January 27, 1948, upon completion of the shipment of the 100 tons, appellees advised plaintiffs by letter that above delivery "completes tonnage on the basis which we had agreed to sell through you at list price plus 23½%." "We have not completed the order and should you care to requote on the balance of pipe due, our price to you will be list plus 32½%." "Since we are heavily placed on commitments at this time, we ask that you let us

know not later than Monday, February 2nd, whether or not you are successful in obtaining the order for the balance of pipe still due D. D. McKay, purchase .order No. 2200, making arrangement for a new letter of credit covering this sale." "In the event we do not hear from you by February 2nd, we are assuming that this balance is not wanted and dispose of this tonnage through our regular channels." Being unable to satisfactorily iron out the controversy which then arose, plaintiffs then on February 16, 1948, notified appellees by letter that "we have elected to treat your repudiation as a wrongful putting an end to said contract and we expect you to pay us damages for breach of said contract, based on the difference between the market price of said pipe and fittings on the date we received said letter, January 29, 1948, and the price you agreed to sell same to us."

It was plaintiff's contention under their pleadings and evidence that the letter of December 2, 1947, was a confirmation of a prior oral agreement and under the letter contract appellees became bound to sell and deliver to plaintiffs 600 tons of the merchandise, within the time and at the price quoted; and that appellees without legal or other excuse repudiated the contract and such refusal to deliver the remaining 500 tons had damaged them in the sum of $14,670. Under pleadings which were verified, appellees answered that the letter had been given by plaintiffs only for the accommodation of plaintiffs, without any consideration being given by plaintiffs, the latter having never accepted it and had never obligated themselves to buy any of the merchandise; and that the letter-contract did not list or determine any definite kind, quantity or grade of merchandise to be delivered; and for the reasons stated, the letter-contract lacked mutuality and was unenforceable.

The jury findings to special issues Nos. 2, 3, 5, and 6 sustained appellees' contentions that plaintiffs did not on or before December 2, 1947, promise to pay appellees the sums of money set out in the letter for the purchase of the merchandise; that plaintiffs did not agree to purchase the merchandise for their own account; that

the letter was delivered and plaintiffs received the same upon condition of resale by them to some third party before they would order any of said merchandise; and that the letter was delivered upon the mutual agreement that the purchase price therein mentioned would be guaranteed before any sale thereunder would be completed. In response to special issue No. 8 the jury assessed damages at $1939.70 for the alleged refusal to make further shipments except on additional terms and prices than those set out in the letter. Plaintiffs' motions to disregard the findings to special issues Nos. 2, 3, 5, and 6 and enter judgment for the amount sued for or in the alternative for $1939.70 were overruled and appellees' motion that plaintiffs take nothing was granted.

The letter does not define what is meant by "list price" but the evidence discloses that the trade understood it to mean different prices for various sizes and specifications of pipe and fittings. Victory weight pipes consisted of a single and double hub, being four or five sizes in each class within the range of sizes quoted in the letter. The term "fittings" as used in the letter would include probably 100 or more sizes and types. Each size and class of pipe or fitting carried a different list price. The letter does not grant to either of the litigants the option to select and determine the particular grades, sizes, or items to be delivered at any time. The letter does not furnish any means of such ascertainment. Grounded upon such facts, so recited in the decree which disposed of the respective motions for judgment, the court concluded that the letter relied upon entirely as the basis of a binding contract was unenforceable, being incomplete and lacking mutuality. This conclusion is sustained. In Gordon v. Emerson Shoe Co., Tex.Civ.App., 242 S.W. 791, 795, applicable here, it is stated, "When no breach of a contract could be assigned which would be compensated by any criterion of damages to be furnished by the contract itself, the contract is void for uncertainty. * * * There not being anything in the contract binding appellant to make such selection, then, as a matter of law, the contract was

but a unilateral executory agreement, amounting to an option to buy, which was void for want of mutuality." See also General Shoe Corp. v. Hall, Tex.Civ.App., 123 S.W.2d 721; 37 Tex.Jur. (Sales) Secs. 19 and 20; 46 Am.Jur. p. 252.

The first paragraph of the letter, which reads, "This will confirm our sale to you of 600 tons * * *" in all reason indicates a prior offer to buy by plaintiffs and an acceptance by appellees. If such offer and acceptance implies the promise by plaintiffs to buy and pay for the merchandise mentioned in the letter and at the prices quoted, this would not eliminate the vice above discussed so as to render it an enforceable contract.

After shipment of the 100 tons in January appellees refused to make further sales of any of the merchandise mentioned in the letter except upon an increased price over the prices therein quoted. Appellees did pay to plaintiffs the excess so received for the 100 tons over the price quoted in the letter. The jury found in response to special issue No. 4 that litigants had not mutually agreed subsequently to the letter upon any terms different to those as therein set out. Plaintiffs contend that above facts under the jury's finding to issue No. 4 constituted a partial performance by appellees which removed at the time the suit was filed any uncertainty, lack of mutuality or want of consideration, if in fact such vice ever existed in the contract and entitled them to judgment for damages of $1939.70 so assessed by the jury in response to special issue No. 8.

It appears that International Operations, Inc., brokers, in 1947, had secured an order for 600 tons of merchandise from the McKay Lumber Company and placed the order with plaintiffs for acceptance. Plaintiffs who secured the letter of December 2, 1947, then accepted the offer of International subject to requirement that plaintiffs be furnished a "revolving" letter of credit for six months. McKay was unable or refused to furnish this "revolving" letter of credit but tendered a "divisible" letter of credit, which plaintiffs rejected and returned. At this state plaintiffs requested appellees to negotiate direct with McKay. As a result

of this direct negotiations McKay placed an order for a specific number of feet of designated sizes of pipe at certain prices and furnished appellees a bank guarantee or letter of credit in the sum of $34,500 that McKay would perform. This letter of credit was irrevocable and covered any shipment up to February 28, 1948. The weight of the pipe specified in above order No. 2200, when calculated by the trade amounted to around 125 tons of pipe. Appellees made the January shipments under above agreement and circumstances. International who in November held an order from McKay for 600 tons of pipe and fittings with specifications similar to those set out in the December 2 letter cancelled out their contract. Any shipments made by appellees to McKay subsequent to January, upon orders for specific sizes and quantity were made upon a month to month basis under agreement based on the market prices prior to shipment. It appears that a revolving letter of credit covering a six months contract would involve a potential liability for performance of around $150,000. Without this appellees refused to enter into a contract for deliveries covering a six months' period. Plaintiffs declined International's order for the same reason. We fail to see where the jury's findings in answer to special issue No. 4 will lend support to plaintiffs' contention that the January shipments were in partial performance of the letter contract and future shipments would be made under its terms. The sale and shipments in January relate to the sale consummated by appellees and McKay as a result of direct negotiations on a month to month basis. The payment to plaintiffs of the commission on this January shipment relates to that sale so negotiated in which plaintiffs had supplied the contract or introduction.

Under such conditions this record will not support the application of the equitable principle as restated in Hutchings v. Slemons, 141 Tex. 448, 174 S.W.2d 487, 489, 148 A.L.R. 1320, which plaintiffs seek here to invoke. This theory of partial performance fails to meet the test as restated in De Lange v. Ogden, Tex.Civ.App., 106 S.W.2d 385, 391, which reads: "* * * that

where one stands on performance to supply the want of mutuality or obligations in a contract, 'that acts of performance must be sufficient to identify the contract in themselves, and with no other view than to fulfill the particular contract to be enforced.' Clegg v. Brannan, 111 Tex. 367, 234 S.W. 1076." See also Johnson v. Breckenridge-Stephens Title.Co., Tex.Com. App., 257 S.W. 223.

The view hereinbefore expressed renders unnecessary a discussion of the other points presented.

The judgment is affirmed.